State v. Weber.

---

## THE STATE v. WEBER.

### (No. 1.)

156 249
159 543

#### Division Two, May 8, 1900.

1. **Horse Stealing:** IDENTITY OF HORSE: TRESPASS. Where, in a prosecution for horse stealing, defendant testified that he had released the horse the morning after the taking, which then took the road for home, a witness's testimony that he saw defendant two days later on a horse he believed to be the same is admissible, the witness having stated why he believed so, and given the points of resemblance between the animals.

2. **Criminal Practice:** TESTIMONY IN REBUTTAL WITHOUT OBJECTION. In a criminal trial, the admission of testimony in rebuttal, which is not strictly so, is not error, where no objection is made until near the close of such testimony, such admission being within the discretion of the trial court.

3. **Horse Stealing:** NO INSTRUCTION ON MALICIOUS MISCHIEF. On a trial for horse stealing, a failure to instruct on malicious mischief is not error, malicious mischief not being a degree of larceny, and

State v. Weber.

R. S. 1889, sec. 3949, and also the Bill of Rights, forbidding the trial and conviction of a defendant for a crime wholly different from that specified in the indictment.

4. ———: ———: NO OBJECTION: WAIVER.  In a trial for horse stealing a failure to except to the court's failure to instruct on all questions of law waives an objection on appeal that an instruction as to malicious mischief was not given.

5. **Feloniously;** FAILURE TO DEFINE.  It is not error to fail to define the word "feloniously," used in the court's instructions on a criminal trial.

Appeal from Dent Circuit Court.—*Hon. L. B. Woodside,* Judge.

AFFIRMED.

The court gave the following instructions, numbered one, two and three, on the part of the State, to-wit:

"1.   The court instructs the jury that if you believe and find from the evidence that the defendant, at and in the county of Dent, and State of Missouri, in the month of April, 1899, did wilfully and feloniously steal, take and carry away, one bay mare, the same charged in the indictment, with the intent at the time to convert the said mare permanently to his own use, and to deprive the owner permanently of the use thereof; and if you further believe and find from the evidence that at the time of such taking, if you find she was so taken, the said mare was the property of Lizzie W. Sankey, and of any value whatever, you will find him guilty of grand larceny, and assess his punishment at imprisonment in the State penitentiary for a term not less than two nor more than seven years.

"2.   The defendant is a competent witness in his own behalf, and his testimony should be considered by you in making up your verdict, but in determining what weight you will give to his testimony, you may consider the fact that he is the defendant on trial.

"3.   If you believe and find from the evidence that the defendant took the mare, at the time and place charged in the

indictment, with the intent at the time of such taking to convert her permanently to his own use, and to deprive the owner permanently of the use thereof, and that the said mare was the property of Lizzie W. Sankey, and of some value, then the fact that the defendant turned the said mare loose would not divest such taking of its felonious character, but in such case he would be guilty of larceny, notwithstanding that he turned the said mare loose, and it was returned to the owner."

The court gave the defendant the following instructions, numbered one, two, three, four, five and six, to-wit:

"1.   The defendant is presumed to be innocent, and this presumption remains until the. State, by evidence, establishes his guilt to your satisfaction, and beyond a reasonable doubt. If, therefore, upon a consideration of all the evidence you have a reasonable doubt of the defendant's guilt, you should give him the benefit of such a doubt, and acquit him; but to authorize an acquittal on the ground of doubt alone, it must be a reasonable doubt, and not the mere possibility of defendant's innocence.

"2.   In order to constitute larceny, the taking must be with the intent, at the time of such taking, to convert permanently to his own use, and to deprive the owner permanently of the use thereof; and if the defendant in this case took the mare in question for the purpose of riding her home, and without the intention of retaining the said mare, and converting her permanently to his own use, then he is not guilty of larceny, and you will acquit him.

"3.   The court instructs the jury that if you believe and find from the evidence that at the time this charge was made against the defendant he was a man of good character, you should take such good character into consideration in passing upon the question of his guilt or innocence, for the law presumes that a man of good character is less likely to commit a crime than one whose character is not good. If, however, upon a consideration of all the evidence, including that touch-

ing his good character, you believe him to be guilty, you should not acquit him solely on the ground of such good character.

"4. Evidence of a witness that he had known the defendant prior to the time the charge was made against him, and was acquainted in the neighborhood in which the defendant lived, and that he had never heard anything said against him, is evidence tending to show and prove that his character was good at said time in said neighborhood.

"5. In making up your verdict, you have a right to consider any statements shown to have been made by defendant after the charge was made against him, but in considering such statements you must consider the whole statements or conversation together. He is entitled to the benefit of what he said in his own behalf, if you believe it is true, but if you do not believe it is true, you are not bound to believe and consider it because proven by the State. You should consider such statement, however, with caution on account of the liability of the witness to forget or misunderstand what was really said or intended.

"6. In order to convict in this case, it devolves upon the State to show and prove by the evidence, beyond a reasonable doubt, that the defendant, at the time and place charged in the indictment, did take, steal and carry away the mare charged in the indictment, with the intent to convert said mare permanently to his own use, and to deprive the owner permanently of the use thereof, and that at the time of such taking the mare was the property of Lizzie W. Sankey, and of some value, and unless the State has so shown, you will find him not guilty."

*J. J. Cope* for appellant.

(1) The evidence in this case shows that the defendant took the horse, but all of the evidence on the part of the State

corroborates the defendant's testimony when he says he did not take the horse feloniously and with the intent to keep it and to permanently deprive the owner of the use of the same, as charged in the indictment. Hence, the demurrer should have been sustained. (2) The evidence of the defendant, as well as that of the State shows that the act and intent of the defendant in taking the horse was only a misdemeanor commonly called "malicious mischief." Hence, it was error not to instruct the jury on the law under the evidence governing the case that they had a right as provided in sec. 3586, R. S. 1889, to convict the defendant of malicious mischief. Hence, the motion for new trial should have been sustained, for the reason that the court should give correct instructions in writing covering the whole law arising on the facts, whether asked or not, and if the defendant's evidence of itself shows a different state of facts from that of the State the instruction is required. State v. Matthews, 20 Mo. 55; State v. Jones, 61 Mo. 232; State v. Branstetter, 65 Mo. 149; State v. Banks, 73 Mo. 592; State v. Palmer, 88 Mo. 568; State v. Brooks, 92 Mo. 542; State v. Wilson, 88 Mo. 13.

*Edward C. Crow*, Attorney-General, and *Sam B. Jeffries*, Assistant Attorney-General, for the State.

(1) The appellant seeks reversal by contending that the court failed to instruct on all the law in the case. It will be noticed in this case that the court gave an instruction to the jury which of itself compelled the jury to acquit defendant, unless they found that at the time he took the horse he intended to convert it permanently to his own use. At the request of the defendant the jury was instructed that "if the defendant had not the intention of converting the property to his own use permanently at the time he took it, then he is not guilty of larceny, and you will acquit him." This is certainly of a character that would remove all prejudice that was raised against defendant by reason of a failure to instruct

for the misdemeanor in conjunction with grand larceny, even though it would have been proper for the court to have so instructed. That the court should give instructions on all the law arising out of the facts carries with it the presumption that that was done. The presumption here is that the court believed that the facts would warrant only a conviction or acquittal of the crime of grand larceny, and if defendant believed the facts were otherwise, it devolved upon him to offer the instructions that he now thinks the court should have given, and if the court had refused them, to have properly made his exceptions. Every instruction offered by defendant was given, and he did not at the time except to the instructions at the trial because they "did not cover all the law in the case." If there should have been an instruction for malicious mischief, then defendant should have at the giving of the instructions excepted to the instructions, because they failed to declare all the law in the case. State v. Albright, 144 Mo. 638; State v. Sprague, 149 Mo. 409; State v. Foster, 115 Mo. 448; State v. Cantlin, 118 Mo. 100; State v. Moxley, 115 Mo. 644. (2) When the accused takes the witness stand in his own defense, he is liable to be impeached just the same as any other witness. Now the State rested as soon as it had proven that defendant committed the act. The act is of that class which the law says shall carry with it the presumption of criminal intent. The defendant then sought to overcome the presumption of intent by himself testifying. Then, anything that tended to impeach or disprove his statements was perfectly proper as rebuttal testimony. In this case, had the State put the witness Granger on the stand during the taking of its evidence in chief, there is little doubt but that defendant would have shaped his evidence to conform to it. Even though this was not proper rebuttal evidence, its admission was in the discretion of the court. State v. Smith, 80 Mo. 516; State v. Buchler, 103 Mo. 203. (3) When the instruction set out all the constituent elements of the crime

charged, it is not necessary to instruct upon the meaning of the words "felonious" and "unlawful." State v. Scott; 109 Mo. 226; State v. Cantlin, 118 Mo. 100.

SHERWOOD, J.—For stealing a bay mare in Dent county, the property of Lizzie Sankey, defendant was tried, convicted and his punishment assessed at two years in the penitentiary.

The evidence, including defendant's admission that he took the mare, showed defendant's guilt beyond question. He stole the mare in Dent county, and rode her off into Phelps county where he was seen using her, and there turned her loose; and she was recovered, a few days afterwards, in the western part of Dent county.

The instructions given on behalf of the State will accompany this opinion, and are such as are usually given. ·

Those given at the instance of defendant will also, in like manner, be preserved. They are extremely favorable to defendant, and certainly leave nothing to be desired in the way of instructions.

Defendant demurred to the evidence offered in behalf of the State, and failing in thus demurring, he excepted and then offered himself as a witness and testified that he took the mare but only for temporary use in order to get home, and having arrived within a few miles of his grandmother's in Phelps county, he turned the mare loose, and she took the back track, and that he had no intention of permanently depriving the owner of the mare of her property; that he took the mare Friday night at ten o'clock, and turned her loose on the following morning (Saturday) between 2 and 3 o'clock, and that she turned and started homeward; but on this point he is contradicted by witness Granger who states he saw defendant in Phelps county on the mare in question riding through the brush on Monday morning next after the theft, and was within a few feet of him. The defendant's character for honesty and

truth was shown to be unquestionably and notoriously bad.

It was not necessary that Granger should positively identify the mare he saw defendant on in Phelps county as being the one charged in the indictment to have been stolen; it was sufficient for him to state he believed the mare to have been the same, after stating why he believed the mare he saw was the same, describing points of resemblance, etc. It was not necessary that the witness should swear positively that the mare was the same. [State v. Babb, 76 Mo. loc. cit. 504 et seq.]

Nor does it matter that Granger's testimony was not strictly in rebuttal. Such things are largely within the discretion of the court, and unless such discretion be manifestly abused, no ground for reversal arises. [State v. Smith, 80 Mo. 516; St. Louis v. Foster, 52 Mo. loc. cit. 517; State v. Buchler, 103 Mo. 203.] Besides, no objection was made that Granger's testimony was not in rebuttal, until his testimony was almost closed.

It is urged that the court should have instructed the jury on the subject of malicious mischief as defined in section 3586, Revised Statutes 1889. There are three answers to this anomalous position. The first, that no exception was saved to the failure of the court to instruct upon all questions of law, etc., conceding for argument that there was such failure. [State v. Cantlin, 118 Mo. 100, and numerous subsequent cases to like effect.] The second, that the offense of malicious mischief is not one of the degrees of larceny, and under the provisions of section 3949, Revised Statutes 1889, it is not permissible to indict a man for one crime and then upon trial to convict him of something wholly different. And third, our Bill of Rights would likewise forbid such a result.

Finally, under frequent decisions of this court it has been ruled not to be necessary to define the words feloniously, etc., in an instruction. [State v. Cantlin, supra; State v. Scott, 109 Mo. 226.]

These views affirm the judgment. All concur.