## THE STATE v. HAROLD J. HILLEBRAND, Appellant.

### Division Two, December 13, 1920.

1. **INSTRUCTION: Omission of Word Feloniously.** The word "feloniously" is a word of classification of the offense charged, and its use in an information or indictment which attempts to charge murder in the first degree is necessary; but it is neither a definition nor a part of the crime, and need not be used in the instruction. So that an instruction which required the jury to find that defendant "wilfully, deliberately, premeditatedly and of his malice aforethought," although it omits the word "feloniously," sufficiently defines murder in the first degree.

2. ————: **Alibi.** The instruction on alibi is set out in full in the opinion, and is held to sufficiently declare the law on the subject.

3. **DEFENDANT AS WITNESS:** Cross-Examination: Other Crimes: Impeachment. As affecting his credibility as a witness, defendant

State v. Hillebrand.

cannot be required to testify concerning a crime to which he has not pleaded guilty and of which he has not been convicted prior to his trial upon the pending charge.

4. ———: ———: ———: ———: Coupled With Argument to Jury. About one month after deceased was held up and killed, defendant enlisted in the Army and was stationed at a camp in another State, and from there wrote the chief of police that, as he expected to leave there in two weeks, he wished to tell him that he was "one of the fellows who held up and shot" deceased, and a few days later made a written confession to the same effect to an officer. He was arrested and brought back, and denounced his confession as a lie, and testified that his reason for writing the letter and making the confession was that he expected to be sent within two weeks to France, that he was unable to obtain a furlough, and had adopted this method in order that he might be brought home and see his mother before he was taken abroad. On cross-examination the State's attorney was permitted to ask him, over proper objections, why he did not, in his letter, accuse himself of a certain robbery he had committed, which was a crime he had at no time pleaded guilty to or been convicted of. In his argument to the jury the said attorney stated that if defendant "wanted to be brought back for doing a felony, there were lots of other acts that he could have mentioned that would have brought him back here, and why should he single out something that he says he did not do when there were things that you know and I know he did do that would have brought him back here?" *Held*, that the cross-examination, coupled with the attorney's argument to the jury, was improper, in violation of the statute, and highly prejudicial.

Appeal from St. Louis City Circuit Court.—*Hon. Vital W. Garesche,* Judge.

REVERSED AND REMANDED.

*Thomas B. Harvey* for appellant.

(1) Prejudicial error was committed by the assistant circuit attorney in stating in his opening argument to the jury that "there was a lot of other acts that he could have mentioned that would have brought him back here just as quick as this one did," "and why should he single out something as he claims he did not do when

there was things that you know and I know that he did do that would have brought him back here;'' and in his closing argument, appealing to the passion and prejudice of the jury in charging that the defendant was wearing a fresh U. S. uniform of a soldier to arouse their sympathy; that ''he had disgraced one and now he wanted to disgrace another,'' and that he (the assistant circuit attorney) ''don't believe that he is in the Army now.'' State v. Prendible, 165 Mo. 358; State v. McDonough, 232 Mo. 230; State v. Rose, 178 Mo. 37; State v. Hess, 240 Mo. 160; State v. Edmundson, 218 S. W. 867. (2) The court erred in its rulings as follows: (a) In overruling the defendant's objection to his cross-examination regarding the alleged robbery by him of Peeler's drug store long subsequent to and not connected with the alleged murder on trial, and in regard to which the defendant had not testified in his direct examination. (b) And in not censuring the assistant circuit attorney for repeatedly interrogating witnesses regarding an alleged shooting of a man named Bock, to which examination the court had sustained an objection. (c) In overruling objections by the defendant to suggestions by the State's counsel in his cross-examination of witnesses, that the defendant and his wife had been engaged in the ''holdup'' business. (d) And in overruling defendant's objection to statement of the State's counsel in his closing argument to the jury that he knew of ''a lot of other acts'' done by the defendant which would have brought him back from the army to St. Louis ''just as quick'' as did this murder charge. State v. Duff, 253 Mo. 422; State v. McBrien, 265 Mo. 612; State v. Helton, 255 Mo. 183; Sec. 5242, R. S. 1909; State v. Grant, 144 Mo. 56; State v. Kyle, 177 Mo. 659; State v. Hathorn, 166 Mo. 229. (3) If the court regarded the prejudicial inquiries of collateral and disconnected acts by the defendant as being competent for a certain purpose, the consideration of it by the jury should have been limited to that purpose by

an appropriate instruction. State v. Jones, 249 Mo. 98; State v. Wellman, 253 Mo. 319; State v. Phillips, 233 Mo. 306; State v. Weeden, 133 Mo. 84.

*Frank W. McAllister*, Attorney-General, *H. P. Ragland* and *C. P. LeMire*, Assistant Attorneys-General, for respondent.

(1) The argument of the assistant circuit attorney of which the appellant complains does not constitute such error as to warrant a reversal of this case. State v. Topalovacki, 213 S. W. 104; State v. Drew, 213 S. W. 107; State v. Harrison, 263 Mo. 642; State v. Prince, 258 Mo. 328; State v. Smith, 250 Mo. 369. (2) The court did not err in overruling objections of counsel to certain questions asked defendant on cross-examination. (a) The questions were based on and invited by matters brought out in his examination in chief. State v. Ivy, 192 S. W. 736; State v. Cushenberry, 157 Mo. 182; State v. Farrar, 146 Mo. 288; State v. Shearon, 183 S. W. 294. (b) Even if said questions were improper this case should not be reversed on that account for the reason that some were not answered; some were answered before any objection was interposed, and no direct or prejudicial answer was elicited in reply to any of said questions. State v. Fisher, 162 Mo. 172; State v. Jackson, 194 S. W. 1078.

MOZLEY, C.—The grand jurors of the City of St. Louis, Missouri, on October 4, 1918, returned an indictment against Harold J. Hillebrand, wherein he was charged with having killed one Sam Brown under such circumstances as to constitute murder in first degree, and the homicide was alleged to have been committed "feloniously, wilfully, deliberately, premeditatedly and of his malice aforethought."

Defendant was duly arraigned, entered a plea of not guilty, and, on April 8, 1919, was tried, and the jury returned the following verdict:

"We, the jury in the above entitled cause, find the defendant guilty of murder in the first degree, as by the indictment he stands charged, and assess his punishment at imprisonment in the penitentiary for his natural life."

Motions for new trial and in arrest of the judgment were filed and overruled, and the cause was duly appealed.

Defendant was a resident of the City of St. Louis and, about one month after deceased was held up and killed in an attempt to rob him, defendant enlisted in the army and was stationed at Camp Funston and while there wrote the following letter to the Chief of Police of St. Louis:

"Chief of Police,

"Dear Sir;

"As I expect to leave here in the next two weeks I will tell you that I am one of the fellows that held up and shot that shoe-dealer at Whittier and Page on a Saturday night. I heard he died . . . I am telling you this as the truth from me, as I don't want any other guy held that is innocent."

A member of the police force went to Camp Funston and in connection with an army officer took a written confession from defendant, going a little more in detail as to how the act was performed, but agreeing with the statements contained in the letter.

Defendant was brought back to St. Louis and at once denounced his confession as a lie, denied that he killed or aided in the killing of Brown, and assigned as reason for the course he had pursued that he was going within two weeks to be sent to France; that he was unable to get a furlough, and had adopted that method to be brought home, so that he could see his mother before going across.

Further facts will be adverted to hereafter.

I. Defendant demurred to the State's evidence, which was overruled, and we think properly so. The

facts in evidence make it a jury case and we overrule this assignment.

II. Defendant urges that the court erred in defining and instructing on murder in the first degree, because the word "feloniously" is omitted therefrom.

Of Instruction No. 1 we set out that part which we understand relates to defendant's contention:

"Bearing in mind these definitions, the court instructs the jury that, if they believe and find from the evidence that the defendant Harold J. Hillebrand, at the City of St. Louis and State of Missouri, at any time prior to the finding of the indictment herein, wilfully, deliberately, premeditatedly and of his malice aforethought, shot and wounded with a revolver one Sam Brown, and that within a year and a day thereafter, to-wit, on the 16th day of March, 1918, Sam Brown died from the effect of such shooting and wounding, they will find the defendant guilty of murder in the first degree, and so say in their verdict, and unless they find the facts to be as stated in this instruction they will acquit the defendant of murder in the first degree."

*Feloniously.*

The term "feloniously" is necessary to be used in an information or indictment in murder in the first degree as a word of classification of the offense charged. It is neither a definition nor part of the crime and need not be used in an instruction. [State v. Jenkins, 213 S. W. 796; State v. Smith, 250 Mo. l. c. 371; State v. Helton, 234 Mo. 559; State v. Cummings, 206 Mo. 613; State v. Scott, 109 Mo. 226; Kelly's Crim. Law (3 Ed.), sec. 390, p. 339.]

In the following cases, which were murder cases, instructions that omitted the word "feloniously" were upheld by this division of the court: State v. McCarver, 194 Mo. l. c. 727; State v. Hottman, 196 Mo. l. c. 119.

In State v. Scott, supra, it was held that "the word 'feloniously' is but descriptive of the grade of the offense, and need not be used in the instruction, or if used need not be explained."

To the same effect are all the authorities above cited.

We conclude that the assignment is without merit and overrule it.

III.   Defendant contends that the court erred in improperly declaring the law as to his defense of alibi. The instruction on this feature of the defense reads as follows:

"The defendant has interposed for a defense what is known as an alibi, that is, that even if the crime was committed, as charged, he was at the time of the commission thereof at another and different place than that in which such offense was committed, and, therefore, was not and could not have been the person who committed the same.   Now, if the evidence leaves in your mind a reasonable doubt as to his presence at the place where the offense was committed at the time of the commission thereof, you will find him not guilty."

*Alibi.*

We think this instruction is well enough and overrule the assignment.   [State v. Bonner, 259 Mo. 1. c. 348; State v. Barton, 214 Mo. 1. c. 322; State v. Cushenberry, 157 Mo. 1. c. 189; State v. Glasscock, 232 Mo. 1. c. 279; Inst. to Juries, p. 517, par. 454.]

IV.   Defendant contends that the court erred in failing to instruct the jury upon the sufficiency and relevancy of the confession of defendant and of the weight to be given a confession when made under the circumstances in this case.   No authorities are cited nor reasons assigned why the instruction is supposed to be erroneous.   We have carefully read it, and think there is no merit to the assignment, and overrule it.

*Confession.*

V.   Defendant alleges that "he was submitted to an illegal and improper cross-examination while a witness on the stand in his own behalf, and that the court erred in permitting the circuit attorney in his argument to the jury to suggest and allege that defendant had been guilty

*Cross-Examination of Defendant.*

of other offenses than the offense of the killing charged in the indictment.''

The State frankly concedes that defendant's contention that the case should be reversed and remanded on account of the above errors is not wholly without merit, but it does not think that said errors are sufficietly serious to justify that result—that the circuit attorney was within his rights in asking questions based on invited matters brought out in the examination in chief by appellant.

The cross-examination of defendant by the State and the language used by the circuit attorney in his argument to the jury ran as follows:

"MR. O'BRIEN:  Q.  You didn't think if you accused yourself of committing robbery in the first degree that they would come after you?  A.  No, sir, I never done anything terrible.

"Q.  And that was your reason for not accusing yourself of things you had done?  A.  That is the reason I wrote the letter, just simply to see my mother before—

"Q.  (Interrupting):  That was the reason that you did not accuse yourself of things you had done?

"MR. McCARTHY:  I object to that, your Honor; it is an improper attack on defendant's character, improper impeachment and cross-examination under the statute.

"THE COURT: Overruled.

"MR. O'BRIEN:  Q.  Isn't that correct, that is the reason you did not accuse yourself of sticking up Peeler's Drug Store, wasn't it?  A.  That is a different case.

"MR. McCARTHY:  I object to that question, and ask the court to instruct the jury to disregard it as an improper attack on defendant's character and improper cross-examination under the statute, and move that the attorney be rebuked.

"THE COURT:  Overruled.

"MR. O'BRIEN:  Q.  Was it?  A.  Why that was, that happened a month after.

"Q. That happened a month after, and you thought about that didn't you? A. I certainly did.

"Q. You certainly did. A. That is the first time—

"Q. (Interrupting): And your wife was helping you in that case, wasn't she. Why did you not notify the police that you were guilty of that, and let them bring you back on that charge?

"MR. McCARTHY: I am going to object to that question on the same grounds, not brought out in direct examination and not proper method under the statute of impeaching a defendant as a witness.

"THE COURT: Overruled.

"MR. O'BRIEN: Q. Why did you not notify the police about that and they would have brought you back in that case—these were two important events in your life? A. Yes.

"Q. Sticking up Peeler's Drug Store and killing this man on March 16th?

"MR. McCARTHY: I am going to object to that question on the same grounds, not brought out in direct examination, improper method of cross-examination and impeachment of a defendant as a witness under the statute.

"THE COURT: It will be overruled.

"MR. McCARTHY: He certainly denied being there, and Mr. O'Brien has no right under the law to refer to any other crime at this time, or to attack defendant's reputation in this way.

"THE COURT: It will be overruled."

Counsel for the State in making his argument to the jury said:

"If he wanted to be brought back for doing a felony, there was lots of other acts that he could have mentioned that would have brought him back here just as quick as this one did, just as quick, and why should he single out something as he claims he did not do when there was things that you know and I know that he did do that would have brought him back here."

Objection to said remarks was made and overruled by the court and exception saved and also to the ruling of the court upon the testimony above set forth.

We have carefully read defendant's examination in chief and it only discloses that he wrote the letter to the police of St. Louis and made the written confession stating that he was one of the parties who killed Brown in an attempt to rob him; his denial that either of them were true, and his testimony as to an alibi.

There is a wide distinction between impeaching a defendant by proof of crimes to which he has pleaded guilty or of which he had been convicted prior to the trial for the crime charged against him, and those which he has not pleaded guilty or been convicted of

If the crime inquired about by the State was one which the defendant had pleaded guilty to or had been convicted of before his trial upon the charge pending against him, then, as affecting his credibility as a witness, he could be required to testify under the provisions of Section 6383, Revised Statutes 1909. A long line of decisions in this State has thus construed said statute, among which we cite: State v. Larkin and Harris, 250 Mo. 218, l. c. 240; State v. Spivey, 191 Mo. 87, l. c. 110; State v. Corrigan, 262 Mo. 195; State v. Mills, 272 Mo. 526.

But it will be noted that the statute, supra, and the authorities cited, only apply to cases where defendant has, prior to the trial in progress, been convicted of a crime which has no reference to the crime then on trial. But as to a crime or crimes which defendant may have committed, which have no reference to the charge upon which he is being tried, and for which he may be prosecuted, the rule is different.

It is our conclusion that said cross-examination was improper and illegal. [State v. Blackburn, 273 Mo. l. c. 482; Constitution of Missouri, art. II, sec. 23; State v. Wellman, 253 Mo. 302; State v. Thomas, 250 Mo. 189, l. c. 192-212; State v. Teeter, 239 Mo. 475; State v.

Sharp, 233 Mo. 269, l. c. 284; State v. Thornton, 245 Mo. l. c. 440.

The cross-examination of defendant being illegal and prejudicial under the provisions of Section 5284, Revised Statutes 1909, it was the duty of the court *nisi* to grant a new trial.

The admission of said cross-examination of defendant by the State and the permission of the argument by the counsel for the State to the jury, with the sanction and approval of the learned trial court, must have made and doubtless did make, a very great impression on the minds of the jury adverse to the defendant—they must have thought, in view of the record, that defendant was guilty of other crimes for which he had not been prosecuted and that they had the right to take these matters into consideration in passing on the case being tried before them.

Defendant was convicted of murder in the first degree and given a life sentence in the penitentiary, and while we do not hold this to be "cruel and unusual punishment under our Constitution and laws," we think that such result should not be reached under grossly incompetent testimony and argument to the jury by the counsel for the State.

It results, on account of the error pointed out, that the case will have to be reversed and remanded. It is so ordered. *Railey* and *White, CC.,* concur.

PER CURIAM:—The foregoing opinion of MOZLEY, C., is hereby adopted as the opinion of the court. All of the judges concur.